1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT

8                     FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   MITCHELL ISAIAH GALLIEN,                    No.  2:12-cv-2916-GEB-EFB P

11                    Petitioner,

12          vs.

13   CONNIE GIBSON,                              FINDINGS AND RECOMMENDATIONS

14                    Respondent.

15

16          Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered

18   against him on November 14, 2008, in the Sacramento County Superior Court on charges of

19   burglary, robbery, assault with a deadly weapon, and assault with a firearm, with findings that

20   petitioner personally used and discharged a firearm and that he acted in concert in a home

21   invasion.  Petitioner seeks federal habeas relief on the following grounds: (1) the evidence is

22   insufficient to support the jury finding that he intentionally discharged a firearm in connection

23   with the robbery of two of the victims; (2) jury instruction error violated his right to due process;

24   (3) his sentence of 53 years and four months in prison violates his rights under the Eighth and

25   Fourteenth Amendments; (4) his trial and appellate counsel rendered ineffective assistance; and

26   (5) the trial court violated his right to an impartial jury when it failed to excuse two potentially

27   biased jurors.  Upon careful consideration of the record and the applicable law, the court finds

28   that petitioner's application for habeas corpus relief must be denied.

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of

conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

following factual summary:

> As a result of defendant Mitchell Isiah Gallien's participation in a home invasion robbery, a jury found him guilty of burglary, three counts of robbery, assault with a deadly weapon, and assault with a firearm.  The jury also found defendant personally had used and discharged the firearm, and had acted in concert in the home invasion.   The trial court found defendant had a prior strike conviction for robbery and sentenced him to an aggregate term of 53 years four months in prison.

> On appeal, defendant contends: (1) there was insufficient evidence to prove he discharged the firearm in connection with the robbery of two of the victims; (2) the jury was improperly instructed with CALCRIM No. 3261 on the "escape rule"; and (3) the disparity between his sentence and the sentences imposed upon his cohorts violates his state and federal due process and jury trial rights.  We order a correction to the abstract of judgment, but otherwise affirm the judgment.

> **Facts and Proceedings**

> Around 11:30 a.m. on May 5, 2006, Adolfo Harnandis was with a friend at a fast food restaurant.  While there, he approached Erica Casey and Stormi Bradford and invited them to a Cinco de Mayo party that night.  They exchanged phone numbers and Harnandis gave them the address of the party.

> After Harnandis left, Bradford told Casey that Harnandis would be an easy target for a robbery.  Casey called her sister, defendant, and Deandre McLish, and the five of them spent the day together. Harnandis called Casey several times to confirm their presence at the party.  Twenty minutes before leaving for the party, Casey questioned Harnandis and learned there were four people at the party at that time.

> Casey's sister drove the others to the party, dropping defendant and McLish off around the corner.  When the women arrived, there were four young men in the living room: Harnandis, Francisco Martinez, Macario Perea, and Eugenio Del Angel.   After introductions, Casey's sister called defendant.  Two minutes later, defendant and McLish came in through the front door and the three women left and got into the car that was parked outside.

> Defendant was holding a gun and McLish had brass knuckles. Defendant pointed the gun at the young men and yelled at them to lie down and take everything out of their pockets.  When Harnandis resisted, McLish hit him in the face and took his wallet and $60. McLish then hit Martinez twice in the face with the brass knuckles

and took his wallet, along with $250 to $300.  After also being hit in the face, Perea handed over approximately $1,000.  Del Angel gave the robbers over $100 to $200.

When defendant and McLish left the house, Harnandis followed them outside and saw them get into a car.  Harnandis got into his truck and followed the car, jotting down the license plate number.  Casey's sister was driving fast and Harnandis followed close behind.  As they drove through the neighborhood, defendant leaned out the front passenger window and fired two shots at Harnandis.  Harnandis decided not to follow the car any longer and went back to the house to check on his friends.

The jury found defendant guilty of residential burglary, robbery of Harnandis, robbery of Martinez, robbery of Perea, assault with a deadly weapon, and assault with a firearm.  The jury also found defendant had acted in concert in a home invasion (Pen.Code, § 213, subd. (a)(1)(A); undesignated statutory references that follow are to the Penal Code) in connection with all three robberies, that he personally used (§ 12022.53, subd. (b)) and discharged (§ 12022.53, subd. (c)) a firearm in connection with all three robberies, and had personally used a firearm in connection with the assault with a firearm (§ 12022.5, subd. (a)(1)).

*People v. Gallien*, No. C061809, 2011 WL 302850, **1-2  (Cal.App. 3 Dist. Feb. 1, 2011).

After petitioner's judgment of conviction was affirmed by the California Court of Appeal, he filed a petition for review in the California Supreme Court.  Therein, he raised the same claims that he had raised on direct appeal.  Resp't's Lodg. Doc. 9.  By order dated April 13, 2011, the petition for review was summarily denied.  Resp't's Lodg. Doc. 10.

Petitioner subsequently filed a petition for writ of habeas corpus in the Sacramento Superior Court.  Resp't's Lodg. Doc. 11.  Therein, he claimed that his trial and appellate counsel rendered ineffective assistance and that juror bias violated his right to a fair trial.  *Id.*  On March 13, 2012, the Superior Court denied those claims in a reasoned decision.  Resp't's Lodg. Doc. 12.  On May 2, 2012, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, raising the same claims.  Resp't's Lodg. Doc. 13.  By order dated July 13, 2012, that petition was summarily denied.[1]  Resp't's Lodg. Doc. 15.  Petitioner thereafter filed a petition for

/////

---

[1]   Justice Butz stated that she would issue an Order to Show Cause returnable to the Superior Court.  *Id.*

3

1  a writ of habeas corpus in the California Supreme Court.  Resp't's Lodg. Doc. 16.  That petition

2  was also summarily denied.  Resp't's Lodg. Doc. 17.

3  **II.  Standards of Review Applicable to Habeas Corpus Claims**

4  An application for a writ of habeas corpus by a person in custody under a judgment of a

5  state court can be granted only for violations of the Constitution or laws of the United States.  28

6  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

7  application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

8  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

9  2000).

10  Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

11  corpus relief:

12  An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall not
13  be granted with respect to any claim that was adjudicated on the
merits in State court proceedings unless the adjudication of the
14  claim -

15  (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
16  determined by the Supreme Court of the United States; or

17  (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
18  State court proceeding.

19  For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

20  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

21  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

22  ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

23  Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

24  what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

25  633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

26  precedent may not be "used to refine or sharpen a general principle of Supreme Court

27  jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

28  *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

4

1  (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

2  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

3  be accepted as correct."  *Id.*  Further, where courts of appeals have diverged in their treatment of

4  an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

5  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

6          A state court decision is "contrary to" clearly established federal law if it applies a rule

7  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

8  precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

9  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

10 writ if the state court identifies the correct governing legal principle from the Supreme Court's

11 decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]  *Lockyer v.*

12 *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

13 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

14 court concludes in its independent judgment that the relevant state-court decision applied clearly

15 established federal law erroneously or incorrectly.  Rather, that application must also be

16 unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

17 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

18 review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

19 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

20 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v.*

21 *Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

22 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

23 court, a state prisoner must show that the state court's ruling on the claim being presented in

24 federal court was so lacking in justification that there was an error well understood and

25 /////

26          [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
27 overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
   presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
28 384 F.3d 628, 638 (9th Cir. 2004)).

1    comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131

2    S. Ct. at 786-87.

3         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

4    court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

5    527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

6    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

7    § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

8    considering de novo the constitutional issues raised.").

9         The court looks to the last reasoned state court decision as the basis for the state court

10   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

11   the last reasoned state court decision adopts or substantially incorporates the reasoning from a

12   previous state court decision, this court may consider both decisions to ascertain the reasoning of

13   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

14   a federal claim has been presented to a state court and the state court has denied relief, it may be

15   presumed that the state court adjudicated the claim on the merits in the absence of any indication

16   or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

17   presumption may be overcome by a showing "there is reason to think some other explanation for

18   the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

19   803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

20   but does not expressly address a federal claim, a federal habeas court must presume, subject to

21   rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___,

22   ___, 133 S.Ct. 1088, 1091 (2013).

23        Where the state court reaches a decision on the merits but provides no reasoning to

24   support its conclusion, a federal habeas court independently reviews the record to determine

25   whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.

26   Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

27   review of the constitutional issue, but rather, the only method by which we can determine whether

28   a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

1   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

2   reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

3          A summary denial is presumed to be a denial on the merits of the petitioner's claims.

4   *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

5   just what the state court did when it issued a summary denial, the federal court must review the

6   state court record to determine whether there was any "reasonable basis for the state court to deny

7   relief."  *Richter*, 131 S. Ct. at 784.  This court "must determine what arguments or theories ...

8   could have supported, the state court's decision; and then it must ask whether it is possible

9   fairminded jurists could disagree that those arguments or theories are inconsistent with the

10  holding in a prior decision of [the Supreme] Court."  *Id.* at 786.  The petitioner bears "the burden

11  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  *Walker v.*

12  *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

13         When it is clear, however, that a state court has not reached the merits of a petitioner's

14  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

15  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

16  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

17  **III.  Petitioner's Claims**

18         **A.  Sufficiency of the Evidence**

19         California Penal Code § 12022.53(c) provides: "Notwithstanding any other provision of

20  law, any person who, in the commission of a felony specified in subdivision (a), personally and

21  intentionally discharges a firearm, shall be punished by an additional and consecutive term of

22  imprisonment in the state prison for 20 years."  In his first ground for relief, petitioner claims that

23  the evidence is insufficient to support the jury finding that he intentionally discharged a firearm,

24  within the meaning of this code section, with respect to the robberies of Martinez and Perea.  ECF

25  No. 1 at 4.  He argues that in order to demonstrate the firearm enhancement, the prosecution was

26  required to prove by substantial evidence that: "(1) petitioner personally discharged the firearm

27  during the commission of each robbery; and (2) he intended to discharge the firearm."  *Id.* at 11.

28  /////

Petitioner argues that the evidence showed he had already completed the robberies of both Martinez and Perea before he discharged the firearm at Harnandis. *Id.* at 11-14.

Petitioner notes that he was not anywhere near the vicinity of Martinez or Perea at the time he fired the gun. *Id.* at 14. Therefore, he had reached "a place of temporary safety as to Martinez and Perea." *Id.* Petitioner contends that "each of three robberies as to each of three victims was a separately charged crime, and cannot be conflated into a single crime for purposes of the enhancement." *Id.* at 11. He concludes that "there was no substantial evidence petitioner discharged a firearm while robbing either Martinez or Perea, and the true finding on the enhancements violate petitioner's federal and state due process rights." *Id.* at 11, 20. *See also* ECF No. 22 at 4-5.

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant contends there was insufficient evidence to support the enhancements for discharging a firearm in the commission of the robberies of Martinez and Perea because, he contends, those robberies were complete by the time he fired his gun at Harnandis. We disagree.
>
> Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence . . . ." However, "the crime of robbery is not confined to the act of taking property from victims. The nature of the crime is such that a robber's escape with his loot is just as important to the execution of the crime as obtaining possession of the loot in the first place. Thus, the crime of robbery is not complete until the robber has won his way to a place of temporary safety. [Citations.]" (*People v. Carroll* (1970) 1 Cal.3d 581, 585.) Here, because Harnandis was still pursuing defendant, defendant had not yet made his way to a place of temporary safety at the time he fired his gun. Accordingly, the shooting occurred during the ongoing commission of the robberies.
>
> Defendant contends that, because neither Martinez nor Perea chased him outside of the house, when he reached the car, he had reached a place of temporary safety as to them. Not surprisingly, defendant has cited no authority for the proposition that the victim must be chasing the perpetrator for application of the escape rule. To the contrary, regardless of who was chasing him, defendant had not reached a place of temporary safety while still in flight. (*People v. Johnson* (1992) 5 Cal.App.4th 552, 559.) Accordingly, the commission of the robberies of Martinez and Perea was continuing when defendant fired shots at the pursuing Harnandis.
>
> Nor must the gun use be directed at the victim of the robbery for it to be used during the commission of that robbery. *People v. Fierro*

(1991) 1 Cal.4th 173, 226–227, is instructive.  There, the defendant first robbed the wife and then, before leaving, murdered and robbed her husband.  Defendant argued the gun use finding should be stricken as to the robbery of the wife, because he did not display or personally use the gun during that robbery.  In upholding the finding, the California Supreme Court concluded that "the jury could reasonably have inferred that defendant used the gun against the murder victim to facilitate his escape or to prevent his identification as the robber of [wife]."  (*Fierro, supra*, 1 Cal .4th at p. 227, *disapproved on a different point* in *People v. Letner and Tobin* (2010) 50 Cal.4th 99.)  The high court explained that "[i]n light of the legislative purpose to discourage the use of firearms, it would appear to be immaterial whether the gun use occurred during the actual taking or against the actual victim, so long as it occurred 'in the commission' of the robbery.  (§ 12022.5, subd. (a).)"  (*Fierro, supra*, 1 Cal.4th at p. 226, italics added.)

Here, the evidence supports the finding that defendant discharged the gun at Harnandis to aid his escape from all three victims after all three robberies.  Thus, the true findings on the firearm enhancements with respect to the robberies of Martinez (count 3) and Perea (count 4) are supported by the evidence.

*Gallien* 2011 WL 302850, at **2 -3.

## 1. <u>Applicable Legal Standards</u>

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, ___ U.S. ___, 132 S.Ct. 2, *4 (2011).  Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law.  *Jackson*, 443 U.S. at 324 n.16.

/////

9

1   In conducting federal habeas review of a claim of insufficient evidence, "all evidence

2   must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d

3   1112, 1115 (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences

4   to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

5   inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct.

6   2060, 2064 (2012) ( per curiam ) (citation omitted).  "'Circumstantial evidence and inferences

7   drawn from it may be sufficient to sustain a conviction.'"  *Walters v. Maass*, 45 F.3d 1355, 1358

8   (9th Cir. 1995) (citation omitted).

9       "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

10  the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

11  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  Because this case is governed by the

12  AEDPA, this court owes a "double dose of deference" to the decision of the state court.  *Long v.*

13  *Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th

14  Cir. 2011), *cert. denied* ___ U.S. ___, 132 S.Ct. 2723 (2012)).  *See also Johnson*, 132 S.Ct. at

15  2062 ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to

16  two layers of judicial deference.").

17          **2.  <u>Analysis</u>**

18      For the reasons expressed by the California Court of Appeal, a rational trier of fact could

19  have found beyond a reasonable doubt that petitioner intentionally discharged a firearm during

20  the commission of the robberies of all of the victims.  The California Court of Appeal concluded,

21  after an analysis of state law, that at the time petitioner discharged the firearm at Harnandis he

22  was still acting "during the commission of" the original robbery, including the robberies of

23  Martinez and Perea.  This conclusion by the Court of Appeal is binding on this court.

24  *Waddington v. Sarausad*, 555 U.S. 179, 129 S.Ct. 823, 832 n.5 (2009) ("we have repeatedly held

25  that 'it is not the province of a federal habeas court to reexamine state-court determinations on

26  state-law questions"); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[A] mere error of state law

27  . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) and

28  *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

1  ("a state court's interpretation of state law . . . binds a federal court sitting in federal habeas");

2  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of

3  state law . . . ."  Pursuant to California law, the robberies were not complete when petitioner

4  discharged his firearm because he was still in flight and had not reached a place of temporary

5  safety.

6       The decision of the California Court of Appeal rejecting petitioner's claim that the

7  evidence was insufficient to support the firearm enhancement is not contrary to or an

8  unreasonable application of *In re Winship* to the facts of this case.  Certainly the decision is not

9  "so lacking in justification that there was an error well understood and comprehended in existing

10  law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.

11  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

12      **B.  Jury Instruction Error**

13       In his next ground for relief, petitioner claims that the trial court violated his right to due

14  process when it gave a jury instruction that "misstated the law of the escape rule when there are

15  multiple robbery victims."  ECF No. 1 at 20-30.  The California Court of Appeal described

16  petitioner's arguments in support of this claim, and its ruling thereon, as follows:

17
18         The trial court instructed the jury with CALCRIM No. 3261 ("In Commission of Felony: Defined—Escape Rule") as follows:

19
20         "The People must prove that the defendant personally and intentionally discharged a firearm in the commission of Robbery. [¶]  The crime of robbery continues until the perpetrators have actually reached a temporary place of safety.  [¶]  The perpetrators have reached a temporary place of safety if: [¶]  They have

21
22  successfully escaped from the scene; [¶]  They are no longer being chased;  *and*  [¶]  They have unchallenged possession of the property."  (Italics added.)

23
24         Defendant makes several challenges to the trial court's use of CALCRIM No. 3261 in this case.  First, defendant argues that the trial court prejudicially erred in failing to instruct the jury with the

25  last sentence in the pattern instruction, which adds, as an additional requirement to finding the perpetrators have reached a temporary

26  place of safety, that "and [¶]  They are no longer in continuous physical control of the person who is the target of the robbery."

27  (CALCRIM No. 3261.)

28

1  But this "error," if it was one, could not have made a difference to the applicability of section 12022.53, subdivision (c) as to counts
2  three and four.

3  Defendant's argument here, echoing somewhat his first argument, is that, since he had reached a temporary place of safety as to the
4  robberies of Martinez and Perea before he discharged the weapon at Harnandis, he could not be found to have discharged the weapon
5  during the course of those robberies.

6  To have reached a place of temporary safety after robbing Martinez and Perea, the evidence would have to show, according to
7  CALCRIM No. 3261, that (1) defendant had successfully escaped from the scene of the robbery, (2) defendant was no longer being
8  chased, (3) defendant had unchallenged possession of the property, and that (4) defendant was no longer in continuous physical control
9  of Martinez and/or Perea.

10  Even if one concedes that defendant had successfully escaped the scene, that he had unchallenged possession of the property that he
11  stole, and that he was no longer in continuous physical control of the victims, the evidence that he was still being chased by
12  Harnandis when he fired the shots was uncontroverted.  As we have explained, it does not matter who defendant was being chased by
13  and, therefore, he had not reached a place of temporary safety when he fired the shots.  Omission of the fourth conjunctive element in
14  the instruction was of no moment.

15  Second, defendant complains that the instruction fails to instruct the jury that the firearm enhancements must be found as to each victim.
16  To the contrary, defendant was charged in count 2 with the robbery of Harnandis, in count 3 with the robbery of Martinez, in count 4
17  with the robbery of Perea, and in count 6 with assault with a firearm upon Harnandis.   The jury was instructed with CALCRIM No.
18  3146 that "If you find the defendant guilty of the crimes charged in Counts 2, 3, 4, or 6 you must then decide whether, *for each crime*,
19  the People have proved the additional allegation that the defendant personally used a firearm during the commission of those crimes.
20  *You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime*."  (Italics
21  added.)  The jury was also instructed in CALCRIM No. 3148 that "If you find the defendant guilty of the crimes charged in Counts 2,
22  3, or 4 you must then decide whether the People have proved the additional allegation that the defendant personally and intentionally
23  discharged a firearm *during that offense*."

24  "'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an
25  instruction or from a particular instruction.'"  (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)   Thus, while not contained in
26  CALCRIM No. 3261, the jury was nonetheless properly instructed with CALCRIM Nos. 3146 and 3148 that the finding had to be
27  made with respect to each offense.

28  /////

12

1

2

3

> To the extent that defendant incorporates his theory that he had reached a place of safety with respect to the two victims who did not pursue him, even though he was still in flight from the scene, we rejected that argument in part I, ante. Thus, no additional or special instruction for multiple robberies or victims was required.

4   *Gallien,* 2011 WL 302850, at **3-4.

5   ### 1. **Applicable Legal Principles**

6   In general, a challenge to jury instructions does not state a federal constitutional claim.

7   *McGuire*, 502 U.S. at 72; *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695

8   F.2d 1195, 1197 (9th Cir. 1983). "Failure to give [a jury] instruction which might be proper as a

9   matter of state law," by itself, does not merit federal habeas relief." *Menendez v. Terhune*, 422

10  F.3d 1012, 1029 (9th Cir. 2005) (quoting *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985)).

11  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely

12  'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

13  right guaranteed by the fourteenth amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

14  To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected

15  the entire trial that the resulting conviction violates due process.'" *Prantil v. State of Cal.*, 843

16  F.2d 314, 317 (9th Cir. 1988) (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir. 1987)). In

17  making its determination, this court must evaluate the challenged jury instructions "'in the

18  context of the overall charge to the jury as a component of the entire trial process.'" *Id.* (quoting

19  *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)). If a jury instruction is ambiguous,

20  inconsistent or deficient, it will violate due process only when there is a reasonable likelihood that

21  the jury applied the instruction in a manner that violates the constitution. *Waddington v.*

22  *Sarausad*, 555 U.S. 179, 190-91 (2009).

23  ### 2. **Analysis**

24  Any claim that CALCRIM No. 3261 violated state law, or should be modified to comport

25  with state law, is not cognizable in this federal habeas corpus action. *Jeffers*, 497 U.S. at 780. To

26  prevail in federal court, petitioner must demonstrate that the giving of this jury instruction

27  rendered his trial fundamentally unfair. Petitioner has failed to make the required showing.

28  /////

13

1  As noted by the California Court of Appeal, any error by the trial court in failing to

2 include the last clause of the jury instruction was harmless because petitioner was unable to

3 demonstrate the second required clause: that he was no longer being chased when he fired his

4 weapon.  Further, as noted by the state appellate court, the instructions, when viewed as a whole,

5 correctly instructed the jurors that they were required to find the firearm enhancement true as to

6 each separate offense.  Under these circumstances, petitioner has failed to show that CALCRIM

7 No. 3261, as given at his trial, violated his right to due process.

8  The decision of the California Court of Appeal denying this jury instruction claim is not

9 contrary to or an unreasonable application of the federal authorities set forth above.  Accordingly,

10 petitioner is not entitled to habeas relief.

11  **C.  Petitioner's Sentence**

12  In his next claim for relief, petitioner argues that his prison sentence of 53 years and four

13 months, when compared to the sentences received by his accomplices McLish and Bradford,

14 violated his rights to due process and equal protection.  ECF No. 1 at 30-37.  He argues that "the

15 disparity in sentencing present in this case constituted an infringement on petitioner's Sixth

16 Amendment right to a jury trial and violated the Due Process and Equal Protection Clauses of the

17 Fifth and Fourteenth Amendments to the United States Constitution."  *Id.* at 31.  Petitioner also

18 argues that the sentencing judge imposed such a lengthy sentence solely because petitioner

19 "exercised the constitutionally guaranteed right to stand trial."  *Id.* at 33.

20  **1.  State Court Decision**

21  Petitioner raised these same arguments on direct appeal.  The California Court of Appeal

22 denied petitioner's claims, reasoning as follows:

23
24
25
26
27

> Prior to trial, McLish entered into a negotiated plea with a stipulated prison term of three years.  Casey agreed to testify against defendant at his trial and, in exchange, received a six-month jail term.  Bradford entered into a negotiated plea with a lid of three years in prison.  Defendant was offered, and rejected, a negotiated plea for 25 years four months (which consisted of the middle term of six years for robbery in concert, doubled because of the strike, 10 years for use of the firearm, and three years four months for assault with a firearm on a different victim).

28 /////

14

After trial, defendant was sentenced to 53 years four months as follows: the middle term of six years for robbery, doubled to 12 years for the strike, plus 20 years for personal discharge of a firearm; two consecutive two-year terms for the two other robberies, doubled to four each for the strike, plus two firearm enhancements of six years eight months. The remaining terms were imposed and stayed pursuant to section 654.

Before imposing sentence, the trial court addressed defense counsel's argument about the "equities" of defendant's sentence compared to those of McLish, Casey, and Bradford. The court noted that Casey had pled in exchange for her testimony and that all three individuals had admitted culpability and resolved their cases long ago. Additionally, only defendant carried the "burden of a prior strike" and it was defendant's decision to fire a gun. The court concluded that equity demanded it ensure that the punishment be commensurate to the facts of the case and determined that, considering defendant's prior strike, his significant and aggressive role in the crimes, and his firearm use, his sentence was equitable.

Defendant now renews his argument that his sentence of 53 years four months is disproportionate to his culpability as compared with the punishment received by his cohorts and, therefore, constitutes an infringement upon his rights to a jury trial and due process. He argues that "his relative culpability was less than co-participants" and that he was unconstitutionally punished for exercising his right to a jury trial. The facts, however, do not support his claim.

First, unlike his cohorts, defendant had a prior strike conviction. This prior strike accounts for 10 years of his current sentence.

Second, unlike his cohorts, defendant carried, used and discharged a firearm. Thus, although he may not have come up with the home invasion idea, he engaged in additional criminal conduct and was substantially more culpable than his cohorts. His decision to carry, use and discharge the firearm accounts for 33 years four months of his current sentence.

Accordingly, 43 years four months of defendant's sentence are unique to him. Had defendant not had the prior strike, and not decided to bring his gun, he would have received a sentence of 10 years (or less, had he not had such a significant criminal history and been on probation at the time of the current offense). Absent defendant's criminal record and use of the firearm, his sentence would have been much closer to the terms imposed upon his cohorts who entered into pretrial pleas.

Additionally, the record does not support defendant's premise that his substantial sentence was due to his exercise of his jury trial right. Defendant was never offered a term comparable to those of his cohorts. The pretrial offer reflected in the record was a lengthy 25 years four months. Therefore, the record reflects that defendant was consistently exposed to a substantial sentence, not because of his decision to go to trial, but due to his criminal record and the nature of his crimes.

Finally, we reject defendant's argument that the increase from 25 years (pretrial offer) to 53 years four months (imposed after trial) demonstrates his sentence was imposed as punishment for exercising his right to a jury trial.  Plea bargaining is now widely accepted.  "'[W]hatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.'  [¶] . . .  [¶] It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty."  (*Bordenkircher v. Hayes* (1978) 434 U.S. 357, 361, 364 [54 L.Ed.2d 604, 609, 611].)  "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.  An initial decision should not freeze future conduct."  (*United States v. Goodwin* (1982) 457 U.S. 368, 382 [73 L.Ed.2d 74, 86].)  Thus, the prosecution's attempt to negotiate a plea bargain does not limit its discretion to prosecute on all the charges upon which an individual is legitimately subject to prosecution and punishment – nor do we presume the decision to move forward with prosecution is a result of vindictiveness.  (*Id.* at pp. 378–382 [73 L.Ed.2d at pp. 83–86.)  Absent egregious facts not present here, we are unwilling to draw any inference from the plea bargain offered by the prosecution before trial.  Moreover, it is the judge, not the prosecutor, who imposes a term of imprisonment.  The prosecutor's pretrial offer does not limit the trial court's discretion to impose an appropriate sentence.

In sum, we do not find defendant's sentence was comparatively disparate or imposed as a punishment for exercising his right to a jury trial.

*Gallien* 2011 WL 302850, at **4-6.

## 2. Applicable Legal Principles

As explained above, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions."  *Wilson v. Corcoran*, 562 U.S. 1, ___, 131 S. Ct. 13, 16 (2010) (quoting *Estelle*, 502 U.S. at 67).  So long as a sentence imposed by a state court "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern."  *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).  "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."  *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).  Thus,

/////

1  whether or not the sentencing judge in this case abused his discretion under state law when he

2  imposed petitioner's sentence is not at issue in this federal habeas corpus proceeding.

3       On federal habeas review, the question "is not whether the state sentencer committed

4  state-law error," but whether the sentence imposed on the petitioner is "so arbitrary or capricious"

5  as to constitute an independent due process violation. *Richmond v. Lewis*, 506 U.S. 40, 50

6  (1992). *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Hicks v. Oklahoma*, 447 U.S. 343,

7  346 (1980); *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000). "The failure of a state to

8  abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth

9  Amendment against arbitrary deprivation by a state." *Fetterly v. Paskett*, 997 F.2d 1295, 1300

10 (9th Cir. 1993). However, "federal courts are extraordinarily chary of entertaining habeas corpus

11 violations premised upon asserted deviations from state procedural rules." *Hernandez v. Ylst*, 930

12 F.2d 714, 719 (9th Cir. 1991).

13      The Eighth Amendment does not require strict proportionality between crime and

14 sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime.

15 *Harmelin v. Michigan*, 501 U.S. 957, 959 (1991) (Kennedy, J., concurring in part and concurring

16 in judgment)). The precise contours of the gross disproportionality principle are "unclear and

17 applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63,

18 73 (2003).

19              **3. <u>Analysis</u>**

20      This court finds that in this case petitioner's sentence does not fall within the type of

21 "exceedingly rare" circumstance that would support a finding that his sentence violates the

22 federal constitution. Petitioner was convicted of burglary, three counts of robbery in connection

23 with a home invasion, assault with a deadly weapon, and assault with a firearm. Pursuant to

24 United States Supreme Court precedent, petitioner's sentence is not grossly disproportionate to

25 these crimes. *See Harmelin*, 501 U.S. at 1004-05 (life imprisonment without possibility of parole

26 for possession of 24 ounces of cocaine raises no inference of gross disproportionality); *Lockyer*

27 (two consecutive twenty-five years to life sentences with the possibility of parole for two petty

28 theft convictions with priors did not amount to cruel and unusual punishment; *Ewing v.*

1     *California*, 538 U.S. 11 (2003) (a sentence of twenty-five years to life for felony grand theft

2     under California's Three Strikes law did not violate the Eighth Amendment).

3         The court also notes that petitioner has not cited any case, and the court has not found one,

4     in which the United States Supreme Court has found that a sentence imposed on a state criminal

5     defendant violated the federal constitution because it was disproportionate to the sentences

6     imposed on other defendants in the same case.  Indeed, the Supreme Court has held that a

7     defendant cannot prove a constitutional violation simply by demonstrating that his sentence is

8     disproportionate to those received by other defendants similarly situated.  *See Pulley v. Harris*,

9     465 U.S. 37, 50–51 (1984).  Accordingly, the state court did not unreasonably apply federal law

10     in concluding that petitioner was not entitled to relief with respect to this challenge to his

11     sentence.  *See Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) ("we conclude that when a

12     Supreme Court decision does not 'squarely address[ ] the issue in th[e] case . . . it cannot be said,

13     under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before

14     us, and so we must defer to the state court's decision"); *Earp v. Ornoski*, 431 F.3d 1158, 1185

15     (9th Cir. 2005) (petitioner's ineffective assistance of counsel claim failed under AEDPA because

16     the issue was an "open question" in the jurisprudence of the Supreme Court).

17         In any event, there is no federal constitutional requirement that co-defendants receive the

18     same sentence.  The critical factor for a court in determining whether a sentence is so

19     disproportionate as to constitute cruel and unusual punishment appears to be whether the sentence

20     is grossly disproportionate to the crimes, not whether the sentence is grossly disproportionate to

21     the sentences received by co-defendants.  *See United States v. Easter*, 981 F.2d 1549, 1555-56

22     (10th Cir. 1992).  "[A] defendant cannot rely upon his co-defendant's sentence as a yardstick for

23     his own; a sentence is not disproportionate just because it exceeds a co-defendant's sentence."

24     *United States v. Granados*, 962 F.2d 767, 774 (8th Cir. 1992).  A defendant who claims that he

25     received a disproportionate sentence "[m]ust establish more than the mere fact that other

26     defendants have received less harsh sentences for similar crimes."  *See United States v. Fry*, 831

27     F.2d 664, 667 (6th Cir. 1987).

28     /////

Even if a constitutional violation could be shown by demonstrating disproportionate sentences among co-defendants, no such disproportionality exists in this case given the different circumstances of each defendant.  As noted by the California Court of Appeal, all but ten years of petitioner's sentence was due to petitioner's prior criminal history and his decision to fire a weapon at Harnandis.  The sentences imposed on McLish, Casey, and Bradford reflect the fact that they accepted a plea offer from the government and, in the case of Casey, testified for the prosecution at petitioner's trial.  Petitioner, on the other hand, chose not to accept a plea offer but, rather, risked a longer sentence if convicted after a trial.  Given that petitioner had a prior criminal record and used a weapon during the commission of the offenses, it was reasonable to expect that he would receive a lengthier sentence than his codefendants.

Petitioner also argues that the trial court "considered the proportionality of petitioner's sentence compared to McLish's and concluded the two were in different positions because McLish pleaded guilty." ECF No. 1 at 34.  Petitioner argues this is evidence he was sentenced more harshly because he chose to proceed to trial.  *Id.*  This argument is not supported by the record.  The sentencing judge did not conclude that petitioner and McLish were in different positions because McLish pleaded guilty, but rather because petitioner fired a weapon and had a prior conviction, which McLish did not.  *See* Reporter's Transcript on Appeal (RT) at 764-67. The judge specifically stated that "equity demands that I look and ensure that the punishment is equal to the facts of the case, not equal in relationship to the punishments handed out to codefendants."  *Id.* at 766.

Finally, petitioner claims, without elaboration, that his sentence violates the equal protection clause.  The equal protection clause directs state actors to treat similarly situated people alike.  *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class.  *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988).  A criminal defendant alleging an equal protection violation must specifically prove that the "decisionmakers in his case acted with discriminatory purpose." *McCleskey*, 481 U.S. at 292 (quoting *Wayte v. United States*, 597 U.S. 598, 608 (1985)).

19

1  (emphasis in original).  Petitioner's equal protection claim is deficient on its face because it does

2  not allege purposeful discriminatory treatment based on his membership in a suspect class.  In

3  addition, petitioner has not demonstrated that the sentencing judge in this case "acted with

4  discriminatory purpose" or selected or affirmed his sentence because of "its adverse effects upon

5  an identifiable group ."  *McCleskey*, 481 U.S. at 292, 298.

6      For the foregoing reasons, petitioner is not entitled to federal habeas relief on his

7  challenges to his sentence.

8      **D.  Juror Bias**

9      Petitioner claims that the trial court violated his Sixth Amendment right to trial by an

10  impartial jury in failing to remove two jurors for "potential bias."  ECF No. 1 at 6, 47.  The first

11  such juror was the baseball coach of the trial judge's son.  According to petitioner, the trial judge

12  stated that "he and the coach frequently interact during games."  *Id.* at 47.  Petitioner states that he

13  asked both the trial court and his trial counsel to remove this juror "for cause," but they failed to

14  do so.  The second juror in question was the jury foreperson, who "stated during the pretrial

15  stages of trial that she had a family member who was a victim of a similar type of crime in which

16  they never caught the suspect."  *Id.*  Petitioner explains that he asked the trial court and his

17  counsel to remove this juror as well, but they failed to do so.

18      The Sacramento Superior Court denied this claim on procedural grounds, reasoning as

19  follows:

20          Claims that could have been raised on appeal are not cognizable on
            habeas corpus unless the petitioner can show that (1) clear and
21          fundamental constitutional error strikes at the heart of the trial
            process; (2) the court lacked fundamental jurisdiction; (3) the court
22          acted in excess of jurisdiction not requiring a redetermination of
            facts; or (4) a change in law after the appeal affected the petitioner.
23          (*In re Dixon*, (1953) 41 Cal.2d 756, 759; *In re Harris*, (1993) 5
            Cal.4th 813, 828.)  Claims of ineffective assistance of counsel are
24          generally not barred by the above doctrine.  (*See In re Robbins*,
            (1998) 18 Cal.4th 770, 814, fn. 34.)
25
            Petitioner claims that that [sic] the trial court erred by refusing to
26          excuse two jurors for cause.  As the alleged error would have
            appeared in the record, the claim likely could have been raised on
27          appeal, but was not.  Therefore, the issue is barred by *Dixon*.

28  Resp't's Lodg. Doc. 12 at 1.

1           **1.  <u>Procedural Default</u>**

2           Respondent argues that the California Superior Court's citation to *In re Dixon* constitutes

3   a state procedural bar which precludes this court from addressing the merits of this Sixth

4   Amendment claim.  ECF No. 12 at 31-32.

5           As a general rule, "[a] federal habeas court will not review a claim rejected by a state

6   court 'if the decision of [the state] court rests on a state law ground that is independent of the

7   federal question and adequate to support the judgment."  *Walker v. Martin*, 562 U.S.___, ___, 131

8   S. Ct. 1120, 1127 (2011) (quoting *Beard v. Kindler*, 558 U.S. ___, ___, 130 S. Ct. 612, 615

9   (2009).  *See also Maples v. Thomas*, ___U.S.___, ___, 132 S. Ct. 912, 922 (2012); *Greenway v.*

10  *Schriro*, 653 F.3d 790, 797 (9th Cir. 2011); *Calderon v. United States District Court (Bean)*, 96

11  F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The

12  United States Supreme Court recently held that California's *Dixon* bar, under which a defendant

13  procedurally defaults a claim raised for the first time on state collateral review if he could have

14  raised it earlier on direct appeal, is a well-established and regularly followed state procedural bar

15  that is adequate to bar federal habeas review.  *Johnson v. Lee*, ___ U.S. ___, 136 S. Ct. 1802

16  (2016).  Accordingly, petitioner's Sixth Amendment claim appears to be procedurally barred.

17  Even if the claim were not barred, it should be denied for the following reasons.[3]

18          **2.  <u>Applicable Legal Standards</u>**

19          The Sixth Amendment right to a jury trial "guarantees to the criminally accused a fair trial

20  by a panel of impartial, 'indifferent' jurors."  *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  *See also*

21  *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000).

22  Due process requires that the defendant be tried by "a jury capable and willing to decide the case

23  solely on the evidence before it."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Jurors are

24  objectionable if they have formed such deep and strong impressions that they will not listen to

25  testimony with an open mind.  *Irvin*, 81 S. Ct. at 1642 n.3.  Not every incident of juror

26

---

27          [3]   Because the state courts denied this claim on procedural grounds and not on the merits, review of the claim in this court is de novo.  *Stanley*, 633 F.3d at 860; *Reynoso*, 462 F.3d at 1109;

28  *Nulph*, 333 F.3d at 1056.

1   misconduct requires a new trial, however.  *United States v. Klee*, 494 F.2d 394, 396 (9th Cir.

2   1974).  "The test is whether or not the misconduct has prejudiced the defendant to the extent that

3   he has not received a fair trial."  *Id.*  A petitioner is entitled to habeas relief on this ground only if

4   it can be established that constitutional error had "substantial and injurious effect or influence in

5   determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 638 & n.9 (1993);

6   *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000).

7       "[I]n each case a broad discretion and duty reside[s] in the [trial] court to see that the jury

8   as finally selected is subject to no solid basis of objection on the score of impartiality."  *Frazier v.*

9   *United States*, 335 U.S. 497, 511 (1948).  The trial judge has broad discretion in the questioning

10   of potential jurors during voir dire to detect bias.  *See, e.g., Mu'Min v. Virginia*, 500 U.S. 415,

11   423–24 (1991).  To disqualify a juror for cause requires a showing of either actual or implied bias

12   – "that is . . . bias in fact or bias conclusively presumed as a matter of law."  *United States v.*

13   *Gonzalez*, 214 F.3d 1109, 1111 -1112 (9th Cir. 2000) (quoting 47 Am.Jur.2d Jury § 266 (1995)).

14   Jurors are presumed to be impartial.  *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

15           **3.  Analysis**

16       There is no evidence in the record before this court that either of the two jurors in question

17   was biased against petitioner, biased in favor of the prosecution, or unable to listen to the

18   evidence introduced at petitioner's trial with an open mind.  The mere fact that one juror was the

19   coach of the trial judge's son and another juror had a relative who was a victim of a similar crime

20   in which authorities never caught the suspect is insufficient, without more, to establish that either

21   juror was biased.  Petitioner's unsupported statements that the two jurors in question could not be

22   impartial is insufficient to make the required showing.  *See James v. Borg*, 24 F.3d 20, 26 (9th

23   Cir. 1994) ("conclusory allegations which are not supported by a statement of specific facts do

24   not warrant habeas relief").  There is also no evidence that either juror expressed hesitation at

25   serving on petitioner's jury, that any juror problems surfaced at trial, or that any of the attorneys

26   brought possible or actual juror bias to the trial judge's attention.

27       Because there is no evidence of juror bias or that the trial court was aware of any juror

28   bias, petitioner cannot show that the trial court violated his right to an impartial jury in failing to

1    excuse these two jurors.  Petitioner has also failed to show that any error by the trial court in

2    failing to remove these jurors had a "substantial and injurious effect or influence in determining

3    the jury's verdict." *Brecht,* 507 U.S. at 638 & n.9.  Accordingly, he is not entitled to relief on this

4    claim.

5              **E.  Ineffective Assistance of Counsel**

6              Petitioner's next claim is that his trial and appellate counsel rendered ineffective

7    assistance.  After setting forth the applicable legal principles, the court will address these claims

8    below.

9                      **1.  <u>Legal Principles: Ineffective Assistance of Counsel</u>**

10             The applicable legal standards for a claim of ineffective assistance of counsel are set forth

11   in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

12   must show that (1) his counsel's performance was deficient and that (2) the "deficient

13   performance prejudiced the defense." *Id.* at 687.  Counsel is constitutionally deficient if his or

14   her representation "fell below an objective standard of reasonableness" such that it was outside

15   "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal

16   quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

17   fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 131 S.Ct. 770, 787-88 (2011)

18   (quoting *Strickland*, 466 U.S. at 687).

19             A reviewing court is required to make every effort "to eliminate the distorting effects of

20   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

21   conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 131

22   S.Ct. at 789.  Reviewing courts must also "indulge a strong presumption that counsel's conduct

23   falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

24   This presumption of reasonableness means that the court must "give the attorneys the benefit of

25   the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

26   may have had for proceeding as they did." *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388,

27   1407 (2011) (internal quotation marks and alterations omitted).

28   /////

23

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.  A reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

The Strickland standards apply to appellate counsel as well as trial counsel.  *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal.  *Id.* at 1434 n.9.

### 2. Trial Counsel

Petitioner raises several claims of ineffective assistance of trial counsel.  His first such claim is the following:

> Counsel for petitioner failed to conduct a reasonable pre-trial investigation and inquiry of potential witnesses for the defense before calling them to testify on behalf of petitioner as to

1

2

3

> petitioner's whereabouts at the time that the crime was committed which led to counsel calling witnesses that gave confusing and conflicting testimony in regards to being with the petitioner on the day and time of the alleged crime.  The testimony was extremely damning to petitioner's defense.

4

5

6

7

8

9

10

11

12

13

14

ECF No. 1 at 5.  Petitioner explains that two defense witnesses testified they were at a festival with petitioner on the date of the crime.  Later evidence introduced by the prosecutor, however, established that the festival actually occurred two days after the crime occurred.  *Id.* at 42. Petitioner complains that his counsel "put both witnesses on the stand without checking the actual date the festival took place and comparing it to the date of the alleged crime."  *Id.*  He contends that he "would've been better off if counsel never put up a defence [sic] and forced prosecution to prove their case instead of allowing witnesses to deliver contradicting and inaccurate testimony as to the day and time in which the festival took place."  *Id.* at 44.  Petitioner asserts that the case against him was "far from overwhelming" and he argues that "had petitioner had adequate representation along with a reasonable pre-trial investigation it is more than probable there would've been a different outcome."  *Id.* at 43-44.

15

16

17

18

Petitioner raised this claim for the first time in his habeas petition filed in the California Superior Court.  Resp't's Lodg. Doc. 11 at consecutive pgs. 3-6.  The Superior Court denied the claim, reasoning as follows:

19

20

21

22

23

24

25

26

27

28

> Petitioner claims that trial counsel was ineffective for failing to conduct an adequate investigation into the anticipated testimony of two defense witnesses, Ashley and Peggy Valdez.  In particular, he states that the Valdezes testified that petitioner was with them on the date of the offense, May 5, 2006, at a Cinco de Mayo festival either at Discovery Park or Gibson Ranch.  However, on rebuttal, the prosecutor produced evidence that the festival actually took place at Gibson Ranch on May 7, 2006.  Petitioner claims that the witnesses' inaccurate testimony was detrimental to his case and that a reasonable investigation would have resulted in a decision not to call the witnesses to testify.  First, Petitioner provides no evidence to support his claim, such as transcripts of the trial testimony. Second, Petitioner does not provide any information about how counsel could have conducted pre-trial investigation.  The petition does not identify when counsel became aware of the alleged alibi provided by the Valdezes and the defense proposed witness list filed on the first day of trial does not identify either Valdezes [sic] as an anticipated witness.  Therefore, it is possible that pre-trial investigation was not reasonably possible.  Third, even if counsel's conduct was unreasonable, Petitioner has not shown that the failure

> to investigate Petitioner's false alibi resulted in prejudice. According to the unpublished opinion on appeal, among the many prosecution witnesses was one of Petitioner's co-conspirators. It also appears that the victim identified petitioner's mother's vehicle as the one used by the perpetrators. Since there was ample evidence of identity, Petitioner has not shown that absent the testimony of the Valdezes, there was a reasonable likelihood of a more favorable result.

Resp't's Lodg. Doc. 12 at 2-3.

Petitioner is claiming, in essence, that his trial counsel was ineffective in failing to investigate and discover that petitioner's friends, the Valdezes, were lying or mistaken when they testified that they had spent the day of the crime with petitioner, even though petitioner apparently did not advise counsel that his alibi defense was false. Assuming *arguendo* that counsel was ineffective in failing to conduct such an investigation, petitioner is unable to demonstrate prejudice with respect to this claim. As noted by the California Superior Court, the evidence against petitioner was overwhelming. In particular, petitioner's co-defendant Erica Casey testified that she told a police officer petitioner was involved in the robbery and that "he was the one shooting." RT at 174-75, 369. Further, if petitioner's counsel had, upon investigation, ascertained that the Valdezes had not spent the day of May 5, 2006 with petitioner, counsel would certainly not have called them to the witness stand to establish an alibi defense. In that event, petitioner would still have been faced with the prosecution evidence against him, with no defense.

The *Strickland* standard "places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (quoting *Strickland*, 466 U.S. at 694). Petitioner has failed to meet that burden with respect to this aspect of his ineffective assistance of counsel claim. Accordingly, he is not entitled to federal habeas relief.

Petitioner raises two additional claims of ineffective assistance of trial counsel. First, he claims that his trial counsel rendered ineffective assistance in failing to "use peremptory challenges" to remove the two potentially biased jurors, discussed above. ECF No. 1 at 44, 47.

/////

1   Second, petitioner claims that his trial counsel "coerced" him to go to trial, telling him that he

2   "only faced a max sentence of 32 years which was 7 years more than the plea petitioner was

3   offered." *Id.* at 45.  Petitioner raised these two claims for the first time in his habeas petition filed

4   in the California Court of Appeal.  Resp't's Lodg. Doc. 13 at consecutive pgs. 6-7.  That petition

5   was summarily denied.  Resp't's Lodg. Doc. 15.  Petitioner raised the claims again in his petition

6   for writ of habeas corpus filed in the California Supreme Court.  ECF No. 1 at 44-45.  That

7   petition was also summarily denied.  Resp't's Lodg. Doc. 17.

8       Petitioner's claim that his trial counsel rendered ineffective assistance in failing to

9   exercise peremptory challenges against the two potentially biased jurors lacks merit.  As

10  discussed above, there is no evidence that these jurors were unable to fairly evaluate the evidence

11  at petitioner's trial or that they had formed such deep and strong impressions that they would not

12  listen to testimony with an open mind.  Nor is there any evidence that jury bias prejudiced

13  petitioner to the extent that he did not receive a fair trial.  Accordingly, trial counsel did not

14  render ineffective assistance in failing to exercise a peremptory challenge to these jurors.

15      Petitioner's claim that his trial counsel "coerced" him to go to trial by informing him that

16  he faced a maximum sentence of 32 years in prison should also be denied.  The *Strickland*

17  standards apply to claims of ineffective assistance of counsel involving counsel's advice offered

18  during the plea bargain process.  *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399 (2012); *Lafler v.*

19  *Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2009); *Hill v.*

20  *Lockhart*, 474 U.S. 52, 58 (1985); *Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003).

21  However, counsel is not "required to accurately predict what the jury or court might find." *Id.*

22  See also *McMann*, 397 U.S. at 771 ("uncertainty is inherent in predicting court decisions.").  Nor

23  is counsel required to "discuss in detail the significance of a plea agreement," give an "accurate

24  prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of

25  a plea offer.  *Turner*, 281 F.3d at 881.  Although counsel must fully advise the defendant of his

26  options, he is not "constitutionally defective because he lacked a crystal ball." *Id.*  The relevant

27  question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was

28  /////

1   within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at

2   771.

3        Petitioner's unsupported and self-serving statement that he relied on inaccurate advice

4   from his counsel when deciding to proceed to trial fails to establish either deficient performance

5   or prejudice.  *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (ineffective

6   assistance of counsel claim denied where, aside from his self-serving statement, which was

7   contrary to other evidence in the record, there was no evidence to support his claim); *Dows v.*

8   *Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (noting that there was no evidence in the record to

9   support petitioner's ineffective assistance of counsel claim, "other than from Dows's self-serving

10  affidavit"); *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) (defendant's self-serving

11  statement, under oath, that his trial counsel refused to let him testify insufficient, without more, to

12  support his claim of a denial of his right to testify); *Elizey v. United States*, 210 F. Supp. 2d 1046,

13  1051 (C.D. Ill. 2002) (petitioner's claim that his trial counsel failed to advised him to accept a

14  proffered plea agreement not sufficiently supported where only evidence was petitioner's "own

15  self-serving affidavit and record facts contradicted petitioner's affidavit.").  There is no evidence

16  in the record before the court that petitioner's trial counsel guaranteed a certain sentence, that he

17  failed to advise petitioner of his options, or that counsel's advice was outside the range of

18  competence demanded of attorneys in criminal cases.   Trial counsel was not required to

19  accurately predict petitioner's eventual sentence.

20       The decision of the California courts rejecting petitioner's claims of ineffective assistance

21  of trial counsel is not contrary to or an unreasonable application of federal law.  Accordingly,

22  petitioner is not entitled to relief on these claims.

23                **3.  Appellate Counsel**

24       In his final claim for relief, petitioner argues that his appellate counsel rendered

25  ineffective assistance in failing to raise on appeal the claims of ineffective assistance of trial

26  counsel and potential jury bias discussed above.  ECF No. 1 at 5-6.  He also claims that appellate

27  counsel "refused to investigate the possibility of raising other more viable grounds than those for

28  which counsel raised."  *Id.* at 6.

1    Respondent argues that petitioner's claim regarding insufficient investigation of other

2   claims is unexhausted and should be denied on that basis. ECF No. 12 at 33-34. Assuming

3   *arguendo* that this part of petitioner's ineffective assistance of appellate counsel claim was not

4   exhausted in state court, this court will recommend that it be denied on the merits. See 28 U.S.C.

5   § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

6   notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

7   State").

8    The California Superior Court rejected petitioner's argument that his appellate counsel

9   rendered ineffective assistance in not challenging the trial court's failure to excuse two jurors who

10   were potentially biased. The court reasoned as follows:

11   
12   Appellate counsel performs "properly and competently when he or
    she exercises discretion and presents only the strongest claims
    instead of every conceivable claim." (*Robbins, supra*, 18 Cal.4th at
13   810.)

14   Petitioner argues that the trial court failed to excuse two jurors for
    cause and that appellate counsel was ineffective for failing to raise
    the error on appeal. Petitioner has not provided any evidence to
15   justify dismissing the jurors. Although Petitioner claims that he
    unsuccessfully attempted to obtain the transcripts relating to jury
16   selection, it is his duty to present evidence to support his petition.
    Absent any evidence of actual or possible juror bias, Petitioner has
17   not shown that the trial court erred or that appellate counsel was
    ineffective. Petitioner is not entitled to any relief.
18   

19   Resp't's Lodg. Doc. 12 at 3.

20    The failure of movant's appellate counsel to raise a claim that the trial court violated his

21   federal constitutional rights in failing to excuse two jurors for cause did not constitute an error "so

22   serious as to deprive [movant] of a fair trial." *Strickland*, 466 U.S. at 687. As explained above,

23   petitioner has failed to demonstrate that any such claim had merit. Thus, his appellate counsel's

24   failure to raise this claim did not constitute deficient performance or prejudice. *See Rhoades v.*

25   *Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel did not render ineffective assistance in

26   failing to investigate or raise an argument on appeal where "neither would have gone anywhere");

27   *Matylinsky v. Budge*, 577 F.3d 1083, 1094 (9th Cir. 2009) (counsel's failure to object to

28   testimony on hearsay grounds not ineffective where objection would have been properly

1    overruled), *cert. denied*, ___U.S.___, 130 S. Ct. 1154 (2010); *Rupe v. Wood*, 93 F.3d 1434, 1445

2    (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

3           For the same reason, petitioner is not entitled to relief on his claim that his appellate

4    counsel rendered ineffective assistance in failing to raise on appeal a claim of ineffective

5    assistance of trial counsel or in failing to investigate other, unspecified, appellate claims.  As

6    explained above, petitioner has failed to establish that his trial counsel rendered ineffective

7    assistance.  Moreover, petitioner has failed to demonstrate that his appellate counsel failed to

8    raise any claim on appeal that would have more merit than the claims that she did raise.  This

9    court presumes that appellate counsel exercised her professional judgment to raise the issues on

10   appeal that she considered to be the most meritorious.

11          For the foregoing reasons, petitioner is not entitled to relief on his claims of ineffective

12   assistance of appellate counsel.

13   **IV. Conclusion**

14          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

15   habeas corpus be denied.

16          These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

18   after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21   shall be served and filed within fourteen days after service of the objections.  Failure to file

22   objections within the specified time may waive the right to appeal the District Court's order.

23   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

24   1991).  In his objections petitioner may address whether a certificate of appealability should issue

25   in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

26   /////

27   /////

28   /////

1    2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

2    final order adverse to the applicant).

3    DATED:  June 27, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE